# UNITED STATES DISTRICT COURT
# NORTHER DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| KELLY BOLENBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:06-cv-322 |
| | ) | |
| WAL-MART STORES, INC. and THE | ) | |
| NATIONAL CASH REGISTER COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT and RECOMMENDATION

This matter is before the Court on Defendant National Cash Register's ("NCR") Motion to Enforce Settlement against the Plaintiff, Kelly Bolenbaugh. (Docket # 94.) The District Court Judge, Joseph S. Van Bokkelen, entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1), and Northern District of Indiana Local Rule 72.1, referring this matter to the undersigned Magistrate Judge to prepare a report and recommendation.[1] (Docket # 102.)

Based on the following, this Report and Recommendation recommends that the Defendant's Motion be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kelly[2] maintains that she has two claims: the first is her products liability claim in this

---

[1] The other defendant, Wal-Mart Stores, Inc., settled with Bolenbaugh and has been dismissed from this case. (Docket # 99.) Because NCR has not been dismissed, however, the Court retains jurisdiction over this settlement dispute. *See Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007) (discussing when the district court retains jurisdiction over settlement disputes).

[2] The Court will refer to the Plaintiff as "Kelly," to distinguish her from, where applicable, her husband.

Court stemming from her use of an NCR check-out machine at a Wal-Mart Store; the second arises out of a purported defamatory statement allegedly made about her and her husband to their mobile home park manager by an investigator, Joe Broadaway, while he was conducting pre-trial surveillance for NCR. The Bolenbaughs have not filed a lawsuit on their respective defamation claims and Kelly has not sought to add it to her complaint here.

In its motion, NCR contends that following a failed settlement conference held on October 14, 2009, NCR's counsel and Kelly's attorney engaged in further discussions that resulted in a settlement of the product liability claim as well as her defamation claim. Kelly's counsel maintains, however, that he made it clear at the settlement conference that the defamation claim was not on the table for resolution and nothing he later said or did altered that position.

This brief preamble frames the core issue: has NCR shown that its lawyer and Kelly's counsel achieved a "meeting of the minds" about settling both claims, thus fulfilling a fundamental contractual requirement? At a January 8, 2010, status conference, counsel agreed that no evidentiary hearing was necessary and accordingly they later submitted the following stipulated facts:

1. This case was filed by Plaintiff on August 24, 2006, regarding an incident that occurred in August of 2004 at the Wal-Mart in Columbia City, Indiana. Plaintiff alleged the malfunction of an NCR Fastlane check-out machine resulting in an injury to the Plaintiff.

2. Defendant The National Cash Register Company (hereinafter "NCR") filed its answer on February 22, 2007. Defendant Wal-Mart filed its answer on October 3, 2006.

3. On January 20, 2009, the Court scheduled this matter for trial by jury starting on November 2, 2009.

4. On or about October 1, 2009, Defendant NCR disclosed to Plaintiff surveillance footage that had been taken of Plaintiff on September 1 & 2, 2009, by an investigator, Joe Broadaway.

5. At a hearing on October 2, 2009, the Court ordered the parties to attend a settlement conference before the Honorable Magistrate Judge Cosbey prior to trial.

6. On October 12, 2009, Plaintiff filed a Motion to Amend the Pre-Trial Order to add George Kilgore as a witness and call Joe Broadaway in Plaintiff's case. George Kilgore is the trailer park manager in the trailer park where Plaintiff lives and heard the alleged defamatory statements by Joe Broadaway against Plaintiff.

7. At the settlement conference on October 14, 2009, counsel for Plaintiff indicated to Magistrate Judge Cosbey that the settlement discussions that day would not include alleged defamatory statements made by the investigator conducting the surveillance of Plaintiff. Magistrate Judge Cosbey told defense counsel and the representative for NCR that any settlement that day would not include the alleged defamatory statements by the investigator.

8. While Wal-Mart did settle during the settlement conference held on October 14, 2009, NCR did not settle with Plaintiff that day.

9. The evening after the settlement conference was held, Plaintiff's counsel sent to Defense counsel for NCR a letter with a revised settlement demand which included a paragraph stating: "Finally, the jury will hear about the botched surveillance and the defamation of Kelly and her husband by Mr. Broadaway. I realize Mr. Broadaway will most likely deny he made the statements, but I can assure you Mr. Kilgore will tell a very credible version of precisely what happened and what Mr. Broadaway told him. In my experience this is precisely the type of thing that will inflame a jury."

10. Telephonic settlement negotiations the afternoon and evening of October 20, 2009, between counsel for NCR and the plaintiff resulted in a settlement. There were no discussions regarding the alleged defamation at any time between the settlement conference and the evening of October 20, 2009. The plaintiff did not file a motion to amend her pleadings to include the defamatory statement.

11. A release was sent by counsel for NCR to Plaintiff which included release of the investigator resulting in release of the alleged defamation claim. Plaintiff rejected the NCR release and sent her own release specifically excepting out the alleged defamation claim.

(Docket # 103.)

## II. STANDARD OF REVIEW

An agreement to settle claims in a federal court is enforceable "just like any other contract." *Dillard v. Starcon Int'l, Inc*., 483 F.3d 502, 506 (7th Cir. 2007). "Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law"—in this case, Indiana. *Pohl v. United Airlines, Inc*., 213 F.3d 336, 338 (7th Cir. 2000).

Under Indiana law, an agreement to settle a lawsuit is generally enforceable. *Zimmerman v. McColley*, 826 N.E.2d 71, 76-80 (Ind. Ct. App. 2005) (enforcing an oral settlement agreement in personal injury case). A settlement agreement does not need to be written to be enforceable. *Id*. at 77 n.1. *See also Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000). "Settlement agreements are governed by the same general principles of contract law as any other agreement," and thus require "[a]n offer, acceptance, [and] consideration." *Zimmerman*, 826 N.E.2d at 76.

In addition, "[a] meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Id*. at 77. "The failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract." *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994); *see also Schuler v. Graf*, 862 N.E.2d 708, 715 (Ind. Ct. App. 2007) ("If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed.") (quotation marks omitted). Whether a meeting of the minds exists "is a factual matter to be determined from all the circumstances," and the Court should not consider "the parties' subjective intents but [rather]

their outward manifestation of it." *Zimmerman*, 826 N.E.2d at 77; *Schuler*, 862 N.E.2d at 715.

### III. DISCUSSION

NCR's counsel concedes that at the settlement conference Kelly clearly expressed an unwillingness to settle anything except her product liability claim.[3] (Stip. Facts ¶ 7.) Rather, NCR's entire theory concerning settlement of both of Kelly's claims hinges on its interpretation of a snippet from a letter sent by Bolenbaugh's counsel to NCR's counsel right after the settlement conference. There, as part of a revised settlement demand, Bolenbaugh's counsel suggested that when the case does go to trial, the jury would finally "hear about the botched surveillance and the defamation of Kelly and her husband . . . [.]" (Stip. Facts ¶ 9.)

The statement was offered by Bolenbaugh's counsel in the context that evidence like that would inflame the jury against NCR. (Stip. Facts ¶ 9.) NCR elevates this brief communication to the status of an "outward manifestation" by Kelly that, for the first time, she would consider settling her defamation claim.

On the whole, however, there is a dearth of any evidence that would constitute such an "outward manifestation." *Zimmerman*, 826 N.E. 2d at 77. To the contrary, and to the extent outward manifestations of intent can be catalogued, they point in this instance to the inescapable conclusion that Kelly only intended to resolve her product liability claim. For example, NCR concedes that during the telephone settlement talks that occurred a few days later, the defamation claim was never mentioned, and that Kelly never sought to amend her complaint to either add it as a cause of action or Broadaway as a defendant. (Stip. Facts ¶ 10.) It was only later, when

---

[3] It is not clear whether Kelly's counsel even represents the Bolenbaughs on their defamation claim.

NCR sought to have Bolenbaugh release as part of this case her defamation claim, and also Broadaway, that it became apparent there was a disagreement concerning the scope of the settlement. (Stip. Facts ¶ 11.)

Such a record presents a steep uphill climb for NCR to enforce any claimed settlement. There is no dispute that the number and nature of the claims settled (*i.e.*, Kelly's product liability claim against NCR alone, or that plus the defamation claims of both Bolenbaughs against NCR and Broadaway) is an essential term of the settlement agreement. *See Ochoa*, 641 N.E.2d at 1044. Yet, the letter NCR points to, drafted just hours after NCR was told by Kelly that her defamation claim was off the table for discussion, makes no suggestion that she (and now her husband) had undergone such a remarkable change of heart. The absence of any such intent "negates mutual assent" and leads to the conclusion that there was no "meeting of the minds" and thus no settlement. *Id.*

Nor can it be argued, although this does not appear to be NCR's tack, that NCR was somehow misled by the words of Kelly's counsel into believing that she was offering to put the defamation claim on the table for settlement. The law will not hold parties to a contract that differs from their own understanding unless their words were in such a context that they had reason to know that the other party—here NCR's counsel—would be and was in fact misled. J. Perillo, 1 *Corbin on Contracts*, § 4.13 p. 636 (1993).

This principle is captured in the Restatement (Second) of Contracts § 26 (1981); in particular: "[i]f the addressee of a proposal has reason to know that no offer is intended, there is no offer even though he understands it to be an offer. 'Reason to know' depends not only on the words or other conduct, but also on the circumstances, including previous communications of the

parties . . . ." *Id*. cmt. a.

Under this standard, it is apparent that the letter from Kelly's counsel did not constitute an offer to put the defamation claim back on the negotiating table. During the settlement conference, NCR was specifically told that Kelly would not discuss settlement of the defamation claim, and the letter makes no suggestion that her counsel was now authorized to do so. Moreover, and quite oddly, NCR's counsel apparently never extracted from Kelly's counsel information concerning whether he was also settling the co-extensive defamation claim of her husband, and whether both were willing to release, in addition to NCR, Broadaway as well.

These previous communications, or lack of communications, demonstrate that NCR had reason to know that the mere casual mention of the alleged defamation by Kelly's counsel, in the context of his negotiations of the product liability claim, was not a new and formal offer to settle that claim as well. *See Dean Foods Co. v. Brancel*, 187 F.3d 609, 617-20 (7th Cir. 1999) (finding no contract because "background discussions" did not constitute an offer); *Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1053-56 (N.D. Ill. 1997) (finding no offer because parties had reason to know further approval needed); *cf. Zimmerman*, 826 N.E. 2d at 77-78 (finding a valid offer because the parties had specifically discussed settlement of the claim on several occasions).

Accordingly, since there was no "meeting of the minds" and because NCR cannot truly contend that it was misled into believing that it was settling every claim that Kelly and her husband possessed, its motion should be denied.

### IV. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge hereby recommends that the

Defendant's Motion to Enforce Settlement be DENIED. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

SO ORDERED.

Enter for February 12, 2010.

<u>S/Roger B. Cosbey</u>
Roger B. Cosbey
United States Magistrate Judge